May it please the court. Albinus Prusgentis appointed counsel for appellant Robert Jenkins. I'll be reserving three minutes for rebuttal, please. In August of 2005, Mr. Jenkins was brutally assaulted by several fellow inmates. That assault left him hospitalized for over a week with severe injuries. Mr. Jenkins sued certain corrections officers alleging that they failed to protect him from a known threat by allowing a group of inmates to dispense vigilante discipline. Can I just ask you one My review of the record suggests that it was no such thing. None of the officers knew anything about it. Your client specifically denied there was a problem when he first had been assaulted. How can they protect him when he never told him there was a threat? Isn't that a conditioned precedent to any kind of finding in this case? Well, with respect to your honor, I think looking at the trial court record, and that's what the defendants do in their brief, is they look at the trial court record. And that, to begin with, is the inappropriate — is an inappropriate inquiry. The key thing in this case is that Mr. Jenkins was denied counsel. As a result Well, that's a separate issue, isn't it? That is correct. But that is the reason why looking at the trial court record is not the appropriate inquiry for assessing the errors in this case. But as to Mr. Jenkins' theory throughout this case, Mr. Jenkins' theory was that the appellees, Lieutenant Perry, Sergeant Bradford, Sergeant Talabian, they authorized a group of inmates, the Men's Advisory Council, to dispense discipline after an altercation on August 2nd, 2005. But even looking at the pretrial record, what was the evidence that they had knowledge of the threat here? So the — and this gets into both issues, but especially to the witness issue. Mr. Jenkins submitted a request for three of his witnesses to attend. Sotomayor, could you answer her question directly? What evidence is there? Not what you believe should have been in, but what evidence was there in the record? In the evidence in the trial court record and the pretrial record? Pretrial. In the pretrial record. So this was explained. This is at ER 144 to 149 of the July 30th, 2010, hearing. This is the pretrial conference. Mr. Jenkins explained that one of his witnesses, Michael Benton, would have testified So as — to go back, and this is all in the record in that hearing, Mr. Jenkins, after he was assaulted, returned to the prison, the Pleasant Valley Prison, and he was immediately placed in administrative segregation. Another inmate in administrative segregation with him was Michael Benton. Michael Benton explained to Mr. Jenkins that while he was in ADSEG, as they called it, he had spoken to one of Jenkins' assailants. And that was hearsay, right? Well, with respect, Your Honor, I disagree. There are two levels of hearsay. Both would have fallen to an exception. If I could explain specifically what he said, and then I'll explain why it doesn't fall, and why it's not hearsay. The assailant told Mr. Jenkins — I'm sorry. The assailant told Mr. Benton, quote, and I want to make sure I get it right, We had to seek permission to do what we did, and the administration gave them the permission to do what they did. Fairly read. That is authorizing the assault on Jenkins and Neely, the other inmate. The reason why it's not hearsay, there are two levels of hearsay in this case. So there's a statement from the administration to the assailant, the assailant to Mr. Benton. The first is a statement of a party opponent. There's testimony in the record. There's really — I think it's been undisputed throughout this case, and Sergeant Bradford specifically testified to this at ER 303 to 304, that Lieutenant Perry spoke to the Men's Advisory Council. Statement of a party opponent. Level two, from the assailant to Benton, that's a statement of against — a statement of against interest. He's essentially admitting to an assault on two inmates. And — Why is that a statement against interest? Isn't the point of the statement who authorized it? That doesn't sound like it's against interest. It sounds like it's helpful to him. Well, but he's saying — I mean, he is — regardless of whether he was given permission, that doesn't authorize an assault. That's still a — a felony, as I understand it. I mean, he's admitting to an assault on another inmate. But there was no dispute that there was the assault, right? The only question is whether it was authorized. Well, yeah, but as to the question of hearsay, if this — I mean, if the question about whether this comes in, then the question is whether he is admitting to a crime. He's admitting to an assault on Jenkins. That's why it's a statement against interest. And to go back, I mean, what we're talking — Is that your best evidence, counsel, for the claim that prison officials authorized or ignored the fact that your client was going to be beaten? That is the best evidence in the record, in the pretrial record. We have to rely on the record. We're a court of appeal. Correct, Your Honor. So what in the record is there besides — assuming for a moment that what you just talked about is in the record — what other evidence is there that ties the prison officials to a have been willfully indifferent to your client's concerns? So — and other than the Benton testimony, we also have — and I acknowledge that this is circumstantial evidence, but we have the fact that after — assuming the truth of what Benton said, we have after this authorization on August 2nd, the very next day, Neely is brutally assaulted. The very next day after that, Jenkins is brutally assaulted. And then the last part of this, we have Mr. Jenkins's testimony that when he was then — when he went up to Lieutenant Perry's office after his assault, he recalls that Sergeant Chalabian walked in and said, oh, I see they already got to him. And that's — and that was the end of — and then he goes to the hospital. So that's what we have. But again, Your Honor, I have to disagree with looking at the evidence of the trial court — I mean, ultimately what we're talking about here is the appointment of counsel in this case. Well, that's a separate issue. So are you done with the — you've given us your best shot on the prison officials knowing in advance what was going to happen. Do you want to go now to the counsel issue? Yes, Your Honor. Okay, go ahead. So the appointment of counsel issue — and the appointment of counsel issue bleeds into all of these questions, because ultimately, had Mr. Jenkins had appointed counsel, that is a — I mean, it could have fundamentally altered the entire basis of this case. And that's why looking at a post hoc, looking at the record as it exists, is an inappropriate inquiry for assessing whether it was appropriate at the time that Mr. Jenkins made his request to appoint counsel in this case. You've just lost me. Isn't the test we're going to put upon the district judge abuse of discretion? That's correct, Your Honor. And don't we make a determination of abuse of discretion by — at the time the judge made the decision, the discretion was abused? That's correct, Your Honor. So what did the district judge know at that time, by the record, other than that this was a rather simple assault, that it wasn't too complicated? He'd already worked with this individual. He'd gone through pre-trials. He'd followed it pretty well. I don't — I'm having trouble having sat as a district judge, seeing this as an abuse of discretion of what he knew at that time. So at the time that the district court made this decision, there are two factors that guide this entire inquiry under the Appointment of Counsel test. And this Court has repeatedly held that a district court must evaluate both the likelihood of success on the merits, one, and two, the ability of the petitioner to articulate his claims pro se. And didn't this judge do just that? I mean, your client turns out to be a pretty remarkable lawyer. He did the summary judgment quite well. He had a series of evidentiary requests, and the judge gave him a little latitude, told him he would do that. And then when it came time to talk about the trial, he discouraged him from representing himself. But he said, look, you know, if you're going to do this, I'll work with you. It looks to me like he really bent over backwards recognizing that your client was pro se, but having demonstrated some pretty remarkable legal ability at that point, that the judge did the best he could, carrying out your client's express request, which he'd been discouraged to do. Given the abuse of discretion standard that my colleague has just referred to, how can what the district judge in this setting be an abuse of discretion? So a couple things on that. First, Your Honor, I think I understand your question that Mr. Jenkins made an express request to represent himself. Throughout, Mr. Jenkins repeatedly he repeatedly requested counsel. He did not want to represent himself. And the record reveals a series of inconsistencies, a series of inabilities throughout this case. I mean, Your Honor pointed to his motion for summary judgment. If you'll see his reply, which was filed untimely so it wasn't considered, he actually, in accordance with that reply, he filed a statement of disputed facts. So while he filed a motion for summary judgment, it clearly revealed, despite his best efforts, an inability to actually prosecute his case. And as to the inability prong of this Court's test, a key factor that distinguishes this case from the run-of-the-mill other case are the two prison transfers in this case. Mr. Jenkins, well before any discovery orders, well before any act of litigation, in August in February of 2006, the first transfer, in August of 2008, the second transfer, Mr. Jenkins is at Folsom State Prison, 200 miles away from the Pleasant Valley facility where he was assaulted. We pointed to it in our brief. The Seventh Circuit in Navajar specifically pointed to this factor as something that significantly changes the analysis under the — Isn't that going to be true in a lot of prisoner cases, though, that the prisoner or the witness gets transferred? I can't speak to a lot of cases. I know this case, and I know that this has been a factor that the Seventh Circuit has repeatedly recognized. And in fact, most recently, in Junior v. Anderson, and we didn't cite it in our brief, it's 724F3-812, Seventh Circuit from 2013. The Seventh Circuit stated that a prisoner's inability to investigate facts by virtue of the remoteness of the prison from essential evidence is a familiar ground for regarding counsel as indispensable to the effect of prosecution in the case. But you still need likelihood of success. And we get back to the problem that as of the pretrial record, and the trial record for that matter, but as of the pretrial record, there was just no evidence that was admissible that the officers knew that there was this threat. Well, I disagree on the evidence position, but also on the likelihood of success prong. What this Court has looked at, Mr. Jenkins's case falls well within this Court's case law for assessing likelihood of success. Now, I know that the defendants say that the prisoner's inability to investigate  ground for regarding counsel as indispensable to the effect of prosecution in the case of the Seventh Circuit. Kennedy. What are you relying upon to say that, counsel? Judge Freeland just pointed out the fact that it's the likelihood of success that's the real issue. I've seen nothing in the record, pretrial or otherwise, that suggests that any testimony from either of these two men that he wanted to call would have had the slightest bearing on what the prison officials knew. Isn't the record clear that they did not know any such thing? They were prepared to talk about the assault to see what happened, but they didn't know anything about the mindset or knowledge of the prison officials. Isn't that fair? I disagree, Your Honor. Again, I think the record is that disputed. I think Benton is our clearest point on this fact. And what did he say that bore on that other than the circumstantial issue that you raised earlier? Well, Benton spoke specifically to the fact that this assailant said they had permission to do what they did, fairly read an assault on Jenkins and Neely at the time that they committed the act. And also, but also to go back to this Court's cases. Or to go back to this Court's cases, for example, in Wright, this Court appointed counsel where there were genuine issues and their, quote, will be a trial. In Johnson, this Court appointed counsel noting that the case had cognizable claims. In Solis, this Court reversed the district court's decision, ordered reconsideration, and emphasized that there may well be merit to his claims. In McGarry, yet another case, this Court urged the court to reconsider its decision, stating the claims plausibly may have merit. Yet another case. In Ogle v. Stewart, we didn't cite it. It's 230F Appendix 646, the Ninth Circuit decision from 2007, February 2007. This Court appointed, suggested the appointment of counsel where the plaintiff adequately stated a claim. How many of those cases were published decisions? Johnson was a published decision. Solis was a published decision. And also another one that I didn't mention, a gay man is a published decision. But some of them are unpublished. That's correct, Your Honor. And you know of our ruling that counsel isn't to cite those to us. I'm sorry, what was that? You know of our rule that counsel is not to cite those to us. Correct, Your Honor, but those are after 2007. So that is what these courts – that's what these cases look to, is plausibly stating a claim, genuine issues, and this case falls well within that caseload. Unless there are any further questions, I'll reserve the rest of your time. Thank you. Thank you, counsel. Let's hear from the government. Good morning, Your Honors. Jose Zoledan Cepeda, Attorney General's Office for Defendants. As the panel pointed out, there's – the district court's decisions at issue here are reviewed under an abuse of discretion standard. And under that standard, this Court affirms unless the district court's decision was illogical, implausible, or without support and inferences in the record, and that's from this court, the magistrate judge Beck bent over backwards to give Mr. Jenkins the benefit of the doubt for his claims. Mr. Jenkins was able to articulate his legal claims, and therefore, the district court did not abuse its discretion in denying him counsel. I think counsel's main argument is that if he'd had an attorney, he would have been able to finesse some of these problems by getting this evidence in that they knew what was doing, what was going on, and in fact, they not only knew it, but they caused it by giving this rogue group the opportunity of being the police force in the prison. That's his argument. And so what's your response if they'd had a lawyer appointed, that there would be a change of circumstance? My first response, two separate responses. One has a legal proposition that this case might require further factual development is not itself a reason for counsel being appointed. Exceptional circumstances means just that. On a factual matter, even under the most favorable, charitable reading of the evidence, if this Court were to consider the allegations of what the inmate witnesses would have said, it would not make a difference under the standard, because like Judge Smith pointed out, there is a legal term. Mr. Jenkins requested three inmate witnesses, one of whom was inmate Neely, another one was inmate Howes and inmate Benton. Neely and Howes were witnesses to the incident where Neely was self-assaulted and when Mr. Jenkins was assaulted. Those attacks were not at issue. It all came down to knowledge. So the only key point is what inmate Benton would have added. And like Judge Smith pointed out, it was a hearsay for what inmate Benton allegedly knew, because he was told by this other inmate purportedly. Even getting past that issue, the fact of the matter is what inmate Benton allegedly was told was that the administration, quote, unquote, gave him permission to clean the yard up. I think those were the words that Mr. Jenkins used at the trial. The administration is quite a broad term. The district judge asked inmate Mr. Jenkins, did Benton tell the defendants about this? And Jenkins said no, which goes to the heart of the case. What did the defendants know at this particular point? The trial record evidence was that Captain Williams spoke to the Mance Advisory Council. Don't we have to look at this as of the pretrial record, though? Your opposing counsel made the argument that the abuse of discretion needs to be determined at the time that the decision was made, and that seems correct, isn't it? Even if this Court were to go ahead and look at it as of that point, and there is out-of-circuit case law that holds that, Palmer v. Valdez actually looks at the evidence and the development of the case at trial. But even if the Court were to look back at the record before the trial record, the fact of the matter is there isn't even anything more specific to the pretrial. The best evidence was actually developed at trial by inmate Jenkins, by Mr. Jenkins. At trial, there was pretrial evidence. All that Jenkins said was that Benton knew about the incident. The more specific testimony or the more specific evidence that was arguably developed at trial was in the colloquy between Jenkins and Magistrate Judge Beck at trial, and that's when he said, well, this is what Benton knew. He was told by this particular inmate that the administration, quote-unquote, told him to clean it up. The other record evidence is that the other record evidence is that Or is your argument the administration there didn't mean any of the specific defendants? My yes. The short answer is yes. Because Magistrate Judge Beck asked him further questions about this, and specifically asked him, did Benton tell any of the defendants this? And Jenkins said no, and I can go ahead and provide a direct cite to that particular exchange. So even if the Court looks, whether this Court looks at the record pretrial or the Court looks at Mr. Jenkins' allegations at the actual trial, the fact of the matter is that there wasn't an abuse of discretion to deny these witnesses. And so the district court did not the district court correctly found that these witnesses would not be necessary. They would not add anything to the case. So why did you not move for summary judgment? I -- this case has passed because it's so old, it's been passed around a couple of times for people in my office. I'm not -- I don't know why there wasn't a summary judgment motion. But should we conclude from the fact that the State didn't move for summary judgment that Mr. Jenkins did have a reasonable likelihood of success? The State didn't feel confident that it could win at summary judgment? No, Your Honor, because quite frankly, it's not that difficult to create a trial that's reliable. The issue of fact, all it has to come down to is really whether there's testimony that goes either way, and then the jury has to go ahead and assess that. It doesn't really go to the exceptional circumstances. It might be a relevant factor, obviously, for the exceptional circumstances test, but this Court has said in Wilbur v. Calderon that exceptional circumstances means exactly that. It doesn't just mean any run-of-the-mill cases. I can tell you from experience that a lot of inmate cases are tried, pro se, in these in district because they have so many inmate cases and because there is not a lot of law firms and attorneys that are willing to act as counsel for inmates. But most of the cases really come down to a very basic factual dispute, just like this one. But isn't your position here that there wasn't even a factual dispute on the key issue because there was no admissible evidence? So it seems like there's a little bit of tension there. I think the tension really goes to the fact that when Mr. Jenkins proactively moved for summary judgment under the fact that he has to be given the benefit of the doubt for his factual allegations, that that created a triable issue of fact. But when it came down to trial and he was able to he actually had to establish this evidence within the rules, within the federal rules of evidence, that it was there was no such evidence that he could provide. In his summary judgment motion, he could make these allegations about what he, what the administration allegedly knew. But when it came down to trial and then he had to make this in a digestible proper form, then he wasn't able to show that evidence. That's really what it comes down to, the knowledge element. Is that the point counsel is making, that a lawyer, he would have shown it? That is the point that counsel is making, Your Honor. But the fact of the matter is that that's not the legal test. It's exceptional circumstances. But here, basically, Mr. Jenkins was able to make as best of a case that he could under the facts as they were. What he basically had was a theory of the case, but there's no evidence that's been pointed out that any other individual would have provided evidence that would have made as showing on the knowledge prong of the deliberate indifference test. So what's your best case to get an affirmance? The best argument is the fact that the district court did not abuse its discretion. The district court's ---- Which prior case of our court is your best case to get an affirmance? Palmer v. Valdez, Your Honor. In that case, Judge Hilsen had an inmate who had a ---- to try a case pro se, he had ---- he allegedly had pain from surgery because, so during trial, the district court gave him time so that he could make his argument. The district court pointed out that he made a pretty good case for himself, and this court affirmed, saying there was no abuse of discretion, and the fact that further factual development could have made is not a factor that automatically means appointed counsel is appropriate because then every single case would have that, unless there's any further questions. I have just one quick one. Yes. Since this is pro se, I think I know the answer to the question here, but as I understand it, Mr. Jenkins did not object to the judge's order on the refusal to appoint counsel. Is that correct? Your Honor, yes, I believe that's correct. He made multiple motions, but that's correct. If he did not object, did he waive his right to appeal these particular issues? On the appointment of counsel issue, no, Your Honor, because he made his motion and he put it before the district court, put the issue before the district court. We have argued that he waived a challenge to the district court's pretrial order that excluded his witnesses, and we'll rely on that argument in the answering brief. Unless there's any further questions, I'll submit. I don't believe we have any further questions. Thank you, counsel. Thank you, Your Honors. Just a few points. First of all, I'll start with the waiver issue. There's no waiver on the appointment of counsel. As for the waiver on the exclusion of witnesses, with respect, that argument is meritless. The one case that they cite for this proposition, Fowler from 1947, is entirely distinguishable. As this Court made clear in Fowler, the pretrial order in that case was made with the, quote, cooperation and assent of both parties. What happened is, Fowler, is that the parties stipulated a pretrial order, the court entered that order, no one objected to that pretrial order, it goes up on appeal, and all of a sudden the plaintiffs want to object to that pretrial order. Well, obviously, you can't do that. Here, Mr. Jenkins made a timely motion for the attendance of these three witnesses who I submit were relevant. The district court then denied that motion. Appellee's cite no case for the proposition that a plaintiff, much less a pro se plaintiff, in turn has to object and re-request the very request that the plaintiff had just requested. Second, it seemed we are not appealing the Rule 50 judgment. We are not saying that Mr. Jenkins should have succeeded at trial based on the facts introduced at trial. We are saying this case involves two issues, not the Rule 50 judgment. It involves the appointment of counsel and, two, the exclusion of these witnesses. And the fact is, I can't speak to counsel's experience, but a tiny number of these cases go to trial. And unlike virtually all other inmates in civil rights cases, this case proceeded to trial. When Mr. Jenkins arrived at that trial, having been twice transferred to two different prisons with no counsel, no corroborating witnesses, and no discovery, and unsurprisingly, the district court entered judgment as a matter of law against him. That judgment should be reversed. Any questions by my colleague? If not, we thank you. You said you were appointing counsel, right? Correct, Your Honor. We thank you for your service in this case. I think our pro bono counsel program is the best in the United States. We have, every time that we've had a case where we can't pay a lawyer and we've requested the bar to come forward, the bar has responded. And your argument was excellent, and this person was properly represented, and we've brought an opportunity for justice to people that were not receiving it before. There's a group of judges thought this case ought to be argued, and that's why you got appointed, and we're grateful to you and to your firm for letting you spend this time with us. Thank you, Your Honor. The case is argued as submitted.
judges: Wallace, Smith, Friedland